IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Avenue, NW
Washington, DC 20580

and

**STATE OF TENNESSEE**
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Plaintiffs,

Plaintiffs,

v.

**METHODIST LE BONHEUR
HEALTHCARE**
1211 Union Ave., Suite 700
Memphis, TN 38104

and

**TENET HEALTHCARE CORPORATION**
1445 Ross Avenue, Suite 1400
Dallas, TX 75202

Defendants.

No. 2:20-cv-02835-SHL-tmp

## ANSWER OF DEFENDANT METHODIST LE BONHEUR HEALTHCARE

Defendant Methodist Le Bonheur Healthcare ("Methodist") by and through their

undersigned counsel, answer as follows the allegations of the Complaint filed on November 16,

2020 (the "Complaint"), by the Federal Trade Commission ("FTC" or "Commission") and State

of Tennessee, acting by and through its Office of the Attorney General (collectively,

"Plaintiffs").  Methodist expressly denies that Plaintiffs are entitled to the relief requested or any other relief.  Methodist reserves the right to amend this Answer.

## PRELIMINARY STATEMENT

Methodist – a faith-based nonprofit health system based in Memphis – seeks to acquire two hospitals and other healthcare assets from Tenet to increase the quality of and access to vital healthcare services for residents in the greater Memphis region in line with its long-standing mission to provide convenient, high-quality, cost-effective, family-centered healthcare.  The acquisition of Tenet's for-profit Saint Francis Hospital–Memphis and Saint Francis Hospital– Bartlett (together "Saint Francis") will benefit consumers, patients, employers, and payors in the Memphis metropolitan area, which is all the more important during the current pandemic. Plaintiffs' allegations, premised almost entirely on market share calculations that do not capture or reflect actual competitive dynamics, ignore and fundamentally conflict with the broad support for the deal in the local community. Contrary to the Complaint's allegations, the Proposed Transaction is not likely to harm consumers.

First, the Proposed Transaction will not diminish competition.  It will enhance the key competition driving Methodist's rates with commercial payors: the head-to-head rivalry between Methodist and Baptist Memorial Health Care ("Baptist"), the other major hospital provider in Memphis.  Methodist and Baptist compete fiercely against each other to win the role of anchor provider in payors' narrow provider networks.  This fierce rivalry between Methodist and Baptist is what drives prices lower – a dynamic that will remain unchanged by the Proposed Transaction. Contrary to the Plaintiffs' allegations, Saint Francis is not a meaningful participant in this competition because it offers limited geographic coverage and fewer services.  Removing Saint Francis as an independent provider will not reduce this competitive dynamic.  Instead, Methodist's planned, post-closing enhancements and access to care improvements will

2

*invigorate* competition with Baptist by making Methodist's integrated hospital system more attractive and thereby forcing Baptist to respond with lower prices or improved services in the competition to be anchor providers.  In fact, many of Memphis's largest employers and the area's largest commercial insurers (those most likely to be impacted if, as incorrectly asserted by the FTC, potential anticompetitive effects were likely to occur) support the Proposed Transaction, because they recognize the deal will be good for competition and will greatly benefit the greater Memphis community.

Second, the Proposed Transaction will improve access to services for patients by alleviating overcrowding at Methodist facilities and enhancing the ability of the combined Methodist/Saint Francis healthcare system to launch new services.  For example:

- Methodist will make substantial capital investments in the Saint Francis facilities, which have historically been categorized as "non-core" assets by Tenet.

- The Proposed Transaction will improve access to services by facilitating utilization among Methodist facilities, in particular the overcrowded Germantown campus, with the Saint Francis–Memphis facility.

- Post-closing, Methodist will also establish a comprehensive cancer center at the Saint Francis–Memphis campus and will expand behavioral health services (a critical local need).

- Methodist will incorporate the two Saint Francis standalone hospitals into its broader, integrated clinical systems, which will improve the access and quality of services by allowing for multiple access points.  This change will not only improve convenience for patients, it will also reduce the total cost of care for patients, employers, and commercial payors.

- Methodist's implementation of more integrated care models at Saint Francis will also improve access to care in lower-cost/acuity settings, including greater access to primary care physicians.

- Methodist will leverage its nationally recognized Organizational Improvement Tracking system to improve the quality of care at the Saint Francis facilities.

Third, the Proposed Transaction should reduce rates for services provided at Saint Francis for many commercial payors.  Currently, Saint Francis's rates are significantly higher than Methodist's rates because Tenet (a national for-profit health system) and commercial payors choose to contract on a nationwide or regional basis to reduce negotiation and contract implementation costs.  As a result, Saint Francis's rates are impacted by factors unrelated to competitive dynamics in Memphis that govern Methodist's lower rates, such as payors' desire to obtain particularly low rates in markets (or for services) the payor views as strategic.  Thus, transitioning Saint Francis from Tenet's payor contracts to Methodist's contracts (which will occur promptly as a result of the Proposed Transaction) will result in an immediate and permanent structural decrease in rates for commercial payors at Saint Francis, benefitting consumers, patients, and employers alike.

For these reasons and others described below and to be presented to the Court during this litigation, Plaintiffs' requests for relief should be denied.

## SPECIFIC RESPONSES TO PLAINTIFFS' ALLEGATIONS

### I.     NATURE OF THE CASE

Response to Paragraph No. 1:

The allegations in Paragraph No. 1 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist admits that Methodist and St.

Francis both provide GAC inpatient hospital services in Memphis, but denies the remaining

allegations in Paragraph No. 1.

Response to Paragraph No. 2:

     Admitted.

Response to Paragraph No. 3:

     Methodist denies that shares of all GAC inpatients (regardless of payor type) are a

relevant proxy for, or predictor of, competitive significance, particularly with regard to the

assessment of the Plaintiffs' claims that are focused on solely commercial reimbursement rates

and therefore denies allegations in the first part of Paragraph No. 3.  Methodist lacks knowledge

or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph

No. 3, and therefore denies these allegations.

Response to Paragraph No. 4:

     Denied.

Response to Paragraph No. 5:

     Denied.

Response to Paragraph No. 6:

     Denied.

Response to Paragraph No. 7:

     Denied.

Response to Paragraph No. 8:

     The allegations in Paragraph No. 8 are legal conclusions and therefore do not require a

response.  To the extent that a response is required, Methodist denies the allegations in Paragraph

No. 8.

<u>Response to Paragraph No. 9</u>:

Methodist admits that it stipulated to the entry of a Temporary Restraining Order and states that the content of that stipulation speaks for itself. The remaining allegations in Paragraph No. 9 are legal conclusions and therefore do not require a response. To the extent that a response is required, Methodist denies the remaining allegations in Paragraph No. 9.

## II.     JURISDICTION AND VENUE

<u>Response to Paragraph No. 10</u>:

The allegations in Paragraph No. 10 are legal conclusions and therefore do not require a response. To the extent that a response is required, Methodist admits that this Court has jurisdiction over the allegations in this case under the FTC Act and the Clayton Act.

<u>Response to Paragraph No. 11</u>:

The allegations in Paragraph No. 11 are legal conclusions and therefore do not require a response. To the extent that a response is required, Methodist admits that (a) this Court has personal jurisdiction over Methodist as it pertains to the allegations in this case, and (b) this case is properly before the United States District Court for the Western District of Tennessee.

<u>Response to Paragraph No. 12</u>:

Methodist admits that Paragraph No. 12 purports to quote a portion of Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and states that the statute speaks for itself.

<u>Response to Paragraph No. 13</u>:

Methodist admits that Plaintiffs purport to bring this action for preliminary injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26. The remaining allegations in Paragraph No. 13 are legal conclusions and therefore do not require a response. To the extent that a response is required, Methodist denies the remaining allegations in Paragraph No. 13.

<u>Response to Paragraph No. 14</u>:

Methodist admits that Paragraph No. 14 purports to quote a portion of Section 16 of the Clayton Act, 15 U.S.C § 26, and states that the statute speaks for itself.

<u>Response to Paragraph No. 15</u>:

The allegations in Paragraph No. 15 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist denies the allegations in Paragraph No. 15.

### III.    BACKGROUND

#### A.    The Parties

<u>Response to Paragraph No. 16</u>:

Methodist admits that the Commissions is an administrative agency of the United States government that has the address listed in Paragraph No. 16.  The remainder of the allegations in Paragraph No. 16 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 16, and therefore denies these allegations.

<u>Response to Paragraph No. 17</u>:

Methodist admits that the State of Tennessee is a sovereign state of the United States and has the address listed in Paragraph No. 17.  The remainder of the allegations in Paragraph No. 17 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 17, and therefore denies these allegations.

Response to Paragraph No. 18:

Methodist denies the allegations in the first sentence of Paragraph No. 18, except that

Methodist admits that it is a not-for-profit, faith-based health system headquartered in Memphis,

Tennessee.  Methodist admits the remaining allegations in Paragraph No. 18.

Response to Paragraph No. 19:

Methodist admits that Tenet is a national for-profit health system headquartered in

Dallas, Texas.  Methodist lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in Paragraph No. 19, and therefore denies these allegations.

Response to Paragraph No. 20:

Methodist admits the allegations in the first sentence of Paragraph No. 20.  Methodist

lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph No. 20, and therefore denies these allegations.

**B.      The Proposed Transaction and the Commission's Response**

Response to Paragraph No. 21:

Admitted.

Response to Paragraph No. 22:

Methodist admits that it entered into a timing agreement with the FTC and states that the

content of the timing agreement speaks for itself.

Response to Paragraph No. 23:

Methodist admits that the Commission filed an administrative complaint on November

13, 2020, and an administrative hearing is currently scheduled to begin May 18, 2021.

Methodist lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in the first and second sentences of Paragraph No. 23, and therefore denies

these allegations.  The remaining allegations in Paragraph No. 23 are legal conclusions and

therefore do not require a response.  To the extent that a response is required, Methodist denies the remaining allegations in Paragraph No. 23.

Response to Paragraph No. 24:

Methodist admits that the allegations in Paragraph No. 24 reflect Plaintiffs' characterization of this lawsuit and state that the lawsuit speaks for itself.  To the extent that a response is required, Methodist lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 24, and therefore denies these allegations.

## IV.     THE RELEVANT SERVICE MARKET

Response to Paragraph No. 25:

The allegations in Paragraph No. 25 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist denies the allegations in Paragraph No. 25.

Response to Paragraph No. 26:

The allegations in Paragraph No. 26 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist denies the allegations in Paragraph No. 26.

Response to Paragraph No. 27:

The allegations in Paragraph No. 27 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist denies the allegations in Paragraph No. 27.

Response to Paragraph No. 28:

The allegations in Paragraph No. 28 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist denies the allegations in Paragraph No. 28.

## V.    THE RELEVANT GEOGRAPHIC MARKET

Response to Paragraph No. 29:

The allegations in Paragraph No. 29 are legal conclusions and therefore do not require a response. To the extent that a response is required, Methodist denies the allegations in Paragraph No. 29.

Response to Paragraph No. 30:

The allegations in Paragraph No. 30 are legal conclusions and therefore do not require a response. To the extent that a response is required, Methodist denies the allegations in Paragraph No. 30.

Response to Paragraph No. 31:

The allegations in the last sentence of Paragraph No. 31 are legal conclusions and therefore do not require a response. To the extent that a response is required, Methodist denies the allegations in the last sentence of Paragraph No. 31. Methodist denies the remaining allegations in Paragraph No. 31.

Response to Paragraph No. 32:

Methodist denies that the Memphis Area is the "main area of competition" between Methodist and Saint Francis for GAC inpatient hospital services. Methodist admits that it has analyzed competition within the Memphis Area (among other areas) and has identified hospitals within the Memphis Area as its competitors.

## VI.    MARKET STRUCTURE AND THE PROPOSED TRANSACTION'S PRESUMPTIVE ILLEGALITY

Response to Paragraph No. 33:

Denied.

Response to Paragraph No. 34:

Denied.

10

Response to Paragraph No. 35:

Methodist admits that the first sentence of Paragraph No. 35 references the 2010 U.S. Department of Justice and Federal Trade Commission Horizontal Merger Guidelines ("Merger Guideline") and states that the content of that document speaks for itself.  The remaining allegations in Paragraph No. 35 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist denies the remaining allegations in Paragraph No. 35.

Response to Paragraph No. 36:

The allegations in Paragraph No. 36 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist denies the allegations in Paragraph No. 36.

## VII.   ANTICOMPETITIVE EFFECTS

### A.   Competition Between Hospitals Benefits Consumers

Response to Paragraph No. 37:

Methodist denies the allegations in Paragraph No. 37, except that Methodist admits that, among other forms of competition, hospital systems seek inclusion in commercial insurer's health plan provider networks and seek to attract patients.

Response to Paragraph No. 38:

Methodist denies the allegations in Paragraph No. 38, except that Methodist admits that hospitals negotiate with commercial insurers to become an in-network provider and enter into contracts if mutually agreeable terms are reached.

Response to Paragraph No. 39:

Methodist lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 39, and therefore denies these allegations.

11

Response to Paragraph No. 40:

Methodist lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 40, and therefore denies these allegations.

Response to Paragraph No. 41:

Denied.

Response to Paragraph No. 42:

Methodist admits the allegations in the second sentence of Paragraph 42.  Methodist admits that narrow network health plans typically do not include all area hospitals.  Methodist lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the third and fourth sentences of Paragraph No. 42, and therefore denies these allegations.  Methodist denies the remaining allegations in Paragraph No. 42.

Response to Paragraph No. 43:

Denied.

Response to Paragraph No. 44:

Methodist lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 44, and therefore denies these allegations.

Response to Paragraph No. 45:

Methodist denies the allegations in Paragraph No. 45, except that it admits that hospitals generally compete to attract patients.

**B.      The Proposed Transaction Would Eliminate Beneficial Head-to-Head Competition between the Defendants**

Response to Paragraph No. 46:

Denied.  To the extent that the second and third sentences of Paragraph No. 45 purport to quote documents, Methodist respectfully refers the Court to the documents cited therein in their entirety for a complete and accurate description of their contents.

Response to Paragraph No. 47:

Methodist admits that diversion analysis is an economic tool that uses data to determine the extent to which hospitals are substitutes. Methodist denies that all (commercial and non-commercial) GAC inpatient services are a relevant metric, particularly with regard to the assessment of Plaintiffs' claims that are focused solely on commercial patients. Methodist denies the remaining allegations in Paragraph No. 47.

Response to Paragraph No. 48:

Denied. The principal competitive dynamic driving Methodist's rates is the head-to-head competition with Baptist for inclusion in narrow network products. That competition will be increased rather than diminished as a result of the Proposed Transaction. The evidence further shows that the degree of competition between Saint Francis and Methodist is significantly lower than their respective market shares suggest, as is clearly illustrated by historical natural experiments and other evidence.

**C.      The Proposed Transaction Would Increase Methodist's Bargaining Leverage**

Response to Paragraph No. 49:

Denied. As discussed above, the driver of competition in the Memphis Area is that between Methodist and Baptist. The Proposed Transaction will not lead to a significant increase in bargaining leverage with payors because this competition will be increased rather than lessened post-closing of the Proposed Transaction.

Response to Paragraph No. 50:

Methodist admits that narrow networks include fewer participating hospitals. Methodist denies the remaining allegation in Paragraph No. 50.

Response to Paragraph No. 51:

Methodist admits that narrow network health plans are prevalent in the Memphis Area and certain commercial insurers offer a narrow network that includes Methodist or Baptist. Methodist denies the remaining allegations in Paragraph No. 51.

Response to Paragraph No. 52:

Denied.

Response to Paragraph No. 53:

Denied.  Post-closing, payors will continue to have a fully viable alternative narrow network excluding Methodist by using Baptist as the anchor provider, with or without Regional One.  Today, the Saint Francis hospitals alone are insufficient to anchor a viable attractive alternative narrow network.  Payor networks including only Baptist and Regional One in the full-benefits tier exist today.  Baptist offers every service currently available at Saint Francis and patient discharge data indicates that every zip code in Saint Francis's service area in Tennessee and Mississippi is also within Baptist's 90% service area.  Baptist, as well as Regional One, will continue to offer ample access to virtually all patients who choose to use Saint Francis currently.

### D.    The Proposed Transaction Would Eliminate Vital Quality and Service Competition

Response to Paragraph No. 54:

Denied.

Response to Paragraph No. 55:

Methodist denies the allegations in the first sentence of Paragraph No. 55 as to itself. Methodist denies the allegations in the second and third sentences of Paragraph No. 55.  To the extent that the third sentence of Paragraph No. 55 purports to quote documents, Methodist respectfully refers the Court to the documents cited therein in their entirety for a complete and

accurate description of their contents.  Methodist lacks knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in Paragraph No. 55, and therefore

denies these allegations.

Response to Paragraph No. 56:

       Denied.  As noted above, the Proposed Transaction will increase the combined firm's

ability to compete on quality of care, access to care, and service offerings with Baptist and

Regional One.  The addition of Saint Francis to the Methodist system will not cause any

detriment to patients who use the Saint Francis hospitals.

## VIII.   ENTRY BARRIERS

Response to Paragraph No. 57:

       Denied.

Response to Paragraph No. 58:

       Methodist denies the allegations in Paragraph No. 58, except that it admits that Tennessee

requires a Certificate of Need under certain circumstances.

Response to Paragraph No. 59:

       Methodist denies the allegations in Paragraph No. 59, except that it admits that Tennessee

requires a Certificate of Need under certain circumstances.

Response to Paragraph No. 60:

       Denied.

## IX.   EFFICIENCIES

Response to Paragraph No. 61:

       Denied.

## X.     LIKELIHOOD OF SUCCESS ON THE MERITS, BALANCE OF EQUITIES, AND NEED FOR RELIEF

Response to Paragraph No. 62:

The allegations in Paragraph No. 62 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist denies the allegations in Paragraph No. 62.

Response to Paragraph No. 63:

The allegations in Paragraph No. 63 are legal conclusions and therefore do not require a response.  To the extent that a response is required, Methodist denies the allegations in Paragraph No. 63.

Response to Paragraph No. 64:

Methodist lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph No. 64, and therefore denies these allegations. Methodist denies the remaining allegations in Paragraph No. 64.

Response to Paragraph No. 65:

Methodist lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph No. 65, and therefore denies these allegations. Methodist denies the remaining allegations in Paragraph No. 65.

Response to Paragraph No. 66:

Denied.

Response to Paragraph No. 67:

The allegations in Paragraph No. 67 are requests for relief to which no response is required.  To the extent that a response is required, Methodist denies these allegations.

16

**AFFIRMATIVE DEFENSES**

Without assuming the burden proof that they would otherwise not bear under applicable law, Methodist asserts the following defenses.  Methodist reserves the right to assert and rely upon any other defenses that may become available or known to Methodist throughout the course of this action, and to amend, or seek to amend, its answer or defenses.

1.     The Complaint fails to state a claim on which relief can be granted.

2.     Granting the relief sought is contrary to the public interest.

3.     The Proposed Transaction will not violate Section 5 of the Federal Trade Commission Act, as amended, 15 U.S.C. § 45.

4.     The Proposed Transaction will not substantially lessen competition in the relevant markets in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

5.     The combination of Methodist's and Saint Francis's hospital systems will be procompetitive and will result in substantial merger-specific pricing efficiencies, cost synergies, and other procompetitive effects, all of which will directly benefit patients and consumers throughout the greater Memphis region.  Methodist does not concede any of the anticompetitive effects proffered by Plaintiffs, but in any event, represents that the foregoing procompetitive benefits are substantial and will greatly outweigh any and all alleged anticompetitive effects.

Dated: December 7, 2020

Respectfully Submitted,

s/ Tara L. Reinhart
Tara L. Reinhart (DC Bar No. 462106)
David P. Wales (DC Bar No. 456894)
SKADDEN ARPS SLATE MEAGER & FLOM
LLP

17

1440 New York Ave. NW
Washington, DC 20005
Telephone: (202) 371-7000
Email: Tara.Reinhart@skadden.com
Email: David.Wales@skadden.com

s/ Victor J. Domen Jr.
Victor J. Domen (TN Bar No. 015803 )
Amanda L. Wait (DC Bar No. 982117)
NORTON ROSE FULBRIGHT US LLP
799 9th St. NW
Suite 1000
Washington, DC 20001
Telephone: (202) 662-4642
Email:Vic.Domen@nortonrosefulbright.com
Email:Amanda.Wait@nortonrosefulbright.com

*Counsel for Defendant Methodist Le Bonheur
Healthcare*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of December 2020, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

| | |
|---|---|
| Susan A. Musser, Esq.<br>FEDERAL TRADE COMMISSION<br>Bureau of Competition<br>600 Pennsylvania Avenue, NW<br>Washington, DC 20580<br>Telephone: (202) 326-2122<br>Email: smusser@ftc.gov<br><br>*Counsel for Plaintiff Federal Trade Commission*<br><br>Herbert H. Slatery III, Esq.<br>Attorney General and Reporter<br><br>David McDowell, Esq.<br>Senior Assistant Attorney General<br>OFFICE OF THE ATTORNEY GENERAL AND REPORTER<br>P.O. Box 20207<br>Nashville, TN 37202<br>Telephone: (615) 741-8722<br>Email: David.McDowell@ag.tn.gov<br><br><br>*Counsel for Plaintiff State of Tennessee* | /s/ Tara L. Reinhart_____<br>Tara L. Reinhart (DC Bar No. 462106)<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>1440 New York Ave., N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 371-7000<br>Email: tara.reinhart@skadden.com<br><br>Victor J. Domen (TN Bar No. 015803 )<br>NORTON ROSE FULBRIGHT US LLP<br>799 9th St. NW<br>Suite 1000<br>Washington, DC 20001<br>Telephone: (202) 662-4642<br>Vic.Domen@nortonrosefulbright.com<br><br><br>*Counsel for Defendant Methodist Le Bonheur Healthcare* |